UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**UNITED STATES OF AMERICA**,

                Plaintiff,

v.

**CHASE NEILL**,

                Defendant.

Case Number: 22-CR-40037-HLT

## ORDER DENYING DEFENDANT'S MOTION TO REOPEN DETENTION

On August 15, 2022, Defendant filed a Motion to Reopen Detention. ECF No. 16. For the reasons discussed below, this Motion is denied.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant Chase Neill has been charged via Indictment with one felony: Count 1, Threatening a Federal Official. The Indictment alleges that Defendant threatened to assault and murder United States Representative Jake LaTurner. ECF No. 1. On June 27, 2022, Defendant appeared for his initial appearance. At that time, the Government sought pretrial detention and a detention hearing was held that day. ECF No. 4.

After conducting the detention hearing, the Court ordered Defendant detained pending trial. ECF No. 6. As detailed in the Detention Order, the Court found that by clear and convincing evidence, no condition or combination of conditions will reasonably assure the safety of any other person or the community. *Id.* As discussed at the detention hearing, Defendant left a voicemail message for United States Representative Jake LaTurner stating that he would kill Representative LaTurner and he additionally made threats of violence against other members of Congress. The

content of Defendant's voicemail message raised serious concerns about Defendant's mental health because the voicemail message indicated that the threatened actions were acts of god. *Id.*

Additional factors weighed in favor of pretrial detention, including that Defendant has a significant criminal history, including a charge for possession of a firearm by an involuntarily committed person and sentences for violation of a protective order and domestic battery. At the time of the detention hearing, Defendant was unemployed and did not present any release plan for the Court to consider. Moreover, Defendant declined to participate in a pretrial interview with U.S. Probation, which means that little was known about Defendant's personal history. *Id.* After evaluating the factors in the Bail Reform Act, an evaluation that was necessarily limited by Defendant's decision not to present a release plan or participate in a pretrial interview, the Court ordered Defendant detained pending trial finding that there is no condition or combination of conditions that will reasonably assure the safety of any other person or the community. *Id.*

On August 15, 2022, Defendant filed a Motion to Reopen Detention. ECF No. 16. The basis for the Motion is that Defendant wishes to present a release plan. *Id.* Defendant's release plan is that he will continue to reside with his mother, with whom he resided at various times prior to his arrest. She is willing to serve as a third-party custodian and she will continue to provide financial support and transportation. *Id.* As stated in the Motion, the Government is unopposed to reopening the hearing, but the Government opposes Defendant's release. *Id.* While Defendant previously refused to participate in a pretrial interview with the U.S. Probation Office, on August 20, 2022, U.S. Probation conducted a pretrial interview with Defendant. On August 21, 2022, U.S. Probation provided a Pretrial Services Report (Addendum) to all parties, which detailed U.S. Probation's opposition to Defendant's request for release because no condition or combination of conditions will reasonably assure the appearance of Defendant.

## II. DEFENDANT FAILS TO SATISFY THE REQUIREMENTS TO REOPEN DETENTION.

A detention hearing may be reopened if the Court finds that two requirements have been met: (1) "information exists that was not known to the movant at the time of the hearing"; and (2) this information "has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f)(2). Defendant fails to satisfy at least the second requirement to reopen detention.

Defendant alleges that the detention decision should be reopened because Defendant "did not have any release plan to offer" at the time of the detention hearing and that "[s]ince that time, Mr. Neill's mother has agreed that he could continue to reside with her . . . ." ECF No. 16 at 1-2. Other than the addition of Ms. Neill becoming a third-party custodian, this release plan is essentially how Defendant lived before his arrest—living with his mother and with his mother providing financial support. The Motion does not explain why this information was not known at the time of the detention hearing or what has changed to make this new information.

But even assuming that this were new information, Defendant fails to satisfy the second requirement to reopen detention. This proposed release plan does not have a "material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community."

As detailed in the Pretrial Services Report (Addendum), Defendant's history with his mother is troubling, incredibly unstable and has required significant police intervention. For example, in March 2018, Defendant was arrested by the Lawrence Police Department. Although the charge was ultimately dismissed in June 2018, the Report details that officers had responded

to nine calls for assistance from Defendant or his mother at what is the residence proposed for Defendant's release. The Report states:

> Officers indicated Mr. Neill had been residing in Florida and recently relocated to his mother's residence; however, his mother did not want Mr. Neill residing with her. Ms. Neill told officers Mr. Neill damaged her vehicle while he was living in Florida because he was upset she would not help financially support him. In December 2017, officers noted Adult Protection Services requested police check on Ms. Neill, who was telling them Mr. Neill would not allow her to leave the residence, was verbally abusive, and Ms. Neill was "scared" of him. Officers made contact with Ms. Neill, who stated she was "fine" and told officers not to keep coming to the residence. In January 2018, a friend of Ms. Neill advised officers they received a text message from Ms. Neill stating Mr. Neill was "cussing her out and flipping her off." While at the residence, officers did not observe any signs of damage or injury. Mr. Neill told officers Ms. Neill is "manipulative and exaggerates a lot." At the time, Ms. Neill refused to take action to have Mr. Neill evicted from the residence.
>
> Officers noted eight calls in March 2018 indicated Mr. Neill's mental health had changed and it appeared he was "delusional and very paranoid." Mr. Neill reported thinking people were in his backyard, damaging his property, eavesdropping on him, and hacking his electronics. Mr. Neill told officers he was in the Navy and could hear "a light bulb turn and break." Mr. Neill requested to speak with the FBI, Department of Homeland Security, Attorney General's Office, and the District Attorney's Office in reference to events happening to him. Mr. Neill reported he is being spied upon and "sabotaged" due to his business endeavor to "take over Amazon."
>
> On March 9, 2018, Ms. Neill advised officers Mr. Neill had firearms. On March 16, 2018, Mr. Neill admitted he owned three firearms he kept in drawers and cabinets of his desk. On March 20, 2018, Mr. Neill requested officers to his residence in reference to hearing "someone cock a gun twice outside his house" and heard someone say, "blow his face off." Officers arrived and noted Mr. Neill stated another officer, searching the area, was "talking to deer" and "trying to steal (Mr. Neill's) unicorn business idea." Later in the day, Mr. Neill indicated he owned a firearm.
>
> Officers were granted a search warrant based on the defendant's mental health situation. Officers located an empty box for a Taurus .45 caliber Colt. Mr. Neill advised the firearm had been stolen in

4

Arkansas in January and he reported it stolen with law enforcement. Officers ran the serial number, which did not list the firearm as being reported stolen. Additionally, officers located a Mauser Argentine 189L rifle, a Remington M887 shotgun, a Black Marksman Repeater BB caliber .45, .177 caliber gun, 11 shotgun shells, and empty, double rifle hard-sized carrying case, and an airsoft gun. Officers did not confiscate the airsoft gun. Officers spoke with Ms. Neill and noted, even though she had previously reported Mr. Neill had firearms, she was "extremely shocked" firearms were located downstairs. On March 22, 2018, officers spoke with the defendant's brother, Brian Bragg, whom resides out of state. Mr. Bragg told officers there is "bi-lateral manipulation" between Mr. Neill and his mother. Mr. Bragg continued by saying it is "detrimental to his (Chase's) health by living with her." Mr. Bragg acknowledged he did not have a good relationship with his mother. Furthermore, Mr. Bragg advised his main interest was getting Mr. Neill the "mental health assistance he needs, and is willing to help in any way he can."

In May 2018, the Lawrence Police Department was dispatched to this same home for a report of trespassing. Upon arrival, officers found Defendant. At that time, Defendant's mother had a protection order entered against Defendant. On September 5, 2018, Defendant was sentenced to 60 days incarceration for violating this protection order.

On February 11, 2019, Defendant was arrested on a domestic battery charge. As detailed in the Report, Lawrence Police again were dispatched to the proposed release residence:

> in reference to a domestic disturbance. Upon arrival, officers made contact with Mr. Neill in the basement of the residence. Officers spoke with Mr. Neill, who[] reported he wanted to discuss his mother, Pamela Neill, being a "psychopath" and "projecting herself onto him." The reporting party, Andreniek King, Mr. Neill's ex-fiancée, told officers she and Mr. Neill were arguing in the basement. Ms. King indicated she and Mr. Neill were face to face yelling when Mr. Neill grabbed her around her biceps and "spun her around." Ms. King noted Mr. Neill then placed his hand over her mouth and attempted to pick her off the ground and carry her upstairs. Ms. King told officers she placed her feet against the wall to prevent Mr. Neill from taking her upstairs, at which point, Mr. Neill told Ms. King, she and his mother "would be dead in four days." Ms. King did acknowledge she threw a pen at Mr. Neill. Officers spoke with Pamela Neill, who[] advised Mr. Neill was verbally abusive towards her when she asked him for the code to the

5

> television cable. Ms. Neill told officers she believed Mr. Neill was the "aggressor." Ms. Neill acknowledged hearing Mr. Neill tell Ms. King, she and Ms. King "would be dead in four days."

Defendant failed to appear for two hearings in that case and he was arrested on two separate warrants. Ultimately, he was sentenced to six months incarceration.

The Report additionally details Defendant's serious mental health struggles. "[D]efendant's mother indicated the defendant believed he is the 'Messiah.'" "The defendant's mother reiterated Mr. Neill presents himself as the 'Messiah' and has been doing so for approximately three years. Ms. Neill stated the defendant is 'always fasting' and will not eat the meals she prepares, as he thinks she will poison him. Additionally, Ms. Neill mentioned her son hears voices and is 'paranoid about cameras.' Because of these concerns, the defendant's mother reported Mr. Neill wears 'tinsel' around his head, underwear, and socks." Despite these mental health challenges, there are no proposed conditions in the Motion that address these serious mental health issues, which again were a significant reason for the initial detention order.

Although Defendant has been unemployed for between four and five years, the Report details that Defendant traveled to Israel from December 2019 to December 2021 for reasons that included "'United Nations' purposes." Defendant has reported that his left arm is "non-functional," and he stated that the causes for this injury are "based on religion."

But this is not a situation in which Defendant acknowledges his mental health challenges or has proposed a robust release plan that will address these challenges. The Report states Defendant previously received a Bipolar Disorder diagnosis from Larned State Hospital. Defendant disagrees with his Bipolar Disorder diagnosis. Defendant admits only that he has been diagnosed with Attention-Deficit Disorder, but reports that "he has no concerns regarding his

mental health, aside from experiencing anxiety related to his current legal issues." When asked about records that note he attempted suicide, Defendant refutes that he ever attempted suicide.

Defendant states he would be willing to submit to drug testing as a condition of release, but Defendant refused to answer questions from U.S. Probation regarding his substance abuse history. Instead, the only information about his substance abuse history comes from his mother, who "reported Mr. Neill does not use drugs and has stopped consuming alcohol because the 'Messiah' does not allow."

With regard to Defendant's physical health, approximately four to five years ago, Defendant suffered a head injury, characterized as a head fracture. Defendant's mother stated that "defendant downplays his injury and denies any concerns; however, she and others have noticed a change in behavior since the attack." When asked about the injury, Defendant "reported he is 'perfectly ok' and his mother 'dramatizes' the situation. Mr. Neill's counsel indicated they have reviewed records and there do not appear to be any long-term concerns pertaining to the defendant's head injury."

The Motion does not propose any changes to Defendant's financial situation. As detailed in the Pretrial Services Report, Defendant does not have a history of employment or a job waiting for him upon release. He does not have any income and owes approximately $150,000 in student loans. Defendant's mother has financially supported Defendant over the past few years and will continue to support him if released.

The Government and U.S. Probation both oppose Defendant's release. U.S. Probation lists eight separate factors that underscore the risk Defendant poses to the community. Defendant's release plan fails to meaningfully address these factors or the reasons the Court initially detained Defendant. Because of the significant risks he poses on release, Defendant's proposed plan to be

released to live with his mother does not have a material bearing on whether there are conditions of release that will reasonably assure the safety of any other person and the community. Defendant's history of living with his mother shows that his criminal activity is not deterred by this living arrangement and instead this arrangement has resulted in the need for serious and continuing police intervention over the years.

Because Defendant failed to satisfy the requirements of 18 U.S.C. § 3142(f)(2) to reopen detention, his Motion is denied.

Dated: August 23, 2022, at Topeka, Kansas.

/s/ Rachel E. Schwartz
Rachel E. Schwartz
United States Magistrate Judge